**Edward HOULIHAN; Agnes Houlihan, Appellees,**

v.

**OFFERMAN & COMPANY, INCORPORATED, Appellant.**

No. 93–2684.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided Aug. 4, 1994.

Rebecca E. Bender, Minneapolis, MN, argued, for appellant.

Michael J. Schaffer, Sioux Falls, SD, argued (Roberto A. Lange, on the brief), for appellees.

Before RICHARD S. ARNOLD, Chief Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Edward and Agnes Houlihan (the Houlihans) brought this diversity action against their broker, Offerman & Company, Incorporated (Offerman), alleging various state-law claims relating to their investment losses. Offerman moved to compel arbitration and to stay discovery pursuant to the "Pre–Dispute Arbitration Agreement" contained in a brokerage account application signed by the Houlihans. The district court denied Offerman's motion. Offerman appeals. We reverse.

## I. BACKGROUND

The Houlihans did not sign an arbitration agreement when they opened their account with Offerman in 1983. They did execute such an agreement, however, on October 29, 1992, as one of nineteen provisions of a customer agreement contained in a brokerage account application that Offerman sent to their home. The arbitration clause of the customer agreement provides generally that "all controversies [between the Houlihans

and Offerman] concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, where entered into before, on, or after the date this account is opened" shall be determined by a panel of arbitrators under the arbitration rules of the National Association of Securities Dealers, Inc. Joint Appendix at 30.

The Houlihans brought this suit to recover damages for their alleged investment losses that occurred prior to the date they signed the 1992 customer agreement. Offerman moved to compel arbitration and to stay proceedings in federal court, arguing that the arbitration clause expressly covers preexisting disputes. The Houlihans resisted Offerman's motion claiming that the arbitration agreement was the product of fraud in the inducement and that the agreement lacked consideration and was unconscionable.

The Houlihans' fraud in the inducement claim is based on a letter Offerman sent accompanying the 1992 account application. The letter states that the Securities and Exchange Commission (SEC), trustee banks, and Internal Revenue Service (IRS) require updated information about the account and that the Houlihans must complete and sign the application even if they had previously executed a similar form.[1] The Houlihans claim that the named entities did not require updated account information. Offerman's letter does not mention the arbitration agreement or any other terms of the customer agreement.

Agnes Houlihan claims that she understood from Offerman's letter and from the account application that her signature was necessary only to verify the information she had given on the application. She did not understand that she was agreeing to arbi-trate any disputes with Offerman and she feels that she was tricked into signing this agreement. Edward Houlihan admitted in his video affidavit that he noticed the word "arbitration" on the application, but explained that he did not actually read the terms of the agreement and that he thought the arbitration clause did not apply to him.

The unread account application provides, just above the signature line:

I (WE) REPRESENT THAT I (WE) HAVE READ THE TERMS AND CONDITIONS GOVERNING THIS ACCOUNT AND AGREE TO BE BOUND BY SUCH TERMS AND CONDITIONS AS CURRENTLY IN EFFECT AND AS MAY BE AMENDED FROM TIME TO TIME. THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT WHICH IS PART OF THE CUSTOMER AGREEMENT. I (WE) ACKNOWLEDGE RECEIPT OF THE PRE-DISPUTE ARBITRATION AGREEMENT.

Joint Appendix at 31A. The specific terms of the arbitration agreement are printed on the back of the customers' copy of the application on a page entitled "Customer Agreement."[2]

The district court denied Offerman's motions to stay court proceedings and to compel arbitration. We have jurisdiction over the district court's order pursuant to 9 U.S.C. §§ 16(a)(1)(A) and (B).

## II. DISCUSSION

Before a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agree-

---

1. Offerman claims on appeal that it needed to update its customer account information due to its decision to change from being a self-clearing broker-dealer to being a fully disclosed broker-dealer. According to Offerman, its new clearing firm, National Financial Services Corporation, needed the information to comply with IRS regulations.

2. The customer agreement contains eighteen other provisions describing the Houlihans' and Offerman's obligations, rights and understandings. The application consists of an "onion skin" con-taining a representative copy, regional copy, customer copy and home office copy. The customer copy page is longer than the other copies, which do not set out the customer agreement. The arbitration clause is set off in a box at the bottom of the elongated page. Offerman claims that it intentionally placed the arbitration clause on the lower portion of a page that was longer than the rest of the form so that the customer would notice something was there and look at it. Joint Appendix at 107.

ment to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement. *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994). A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement. 9 U.S.C. §§ 3 & 4. An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2. In reviewing the district court's order, we are mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

■■■ The Houlihans' fraud in the inducement defense to the motion to compel arbitration depends upon the interpretation of *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In *Prima Paint*, the Supreme Court distinguished between fraud in the inducement of the entire contract and fraud in the inducement of the arbitration clause alone. "[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* at 403–04, 87 S.Ct. at 1806. However, a claim of fraud in the inducement of the contract generally, because it does not go to the "making and performance of the agreement to arbitrate," is properly left to arbitration. *Id.* at 404, 87 S.Ct. at 1806. Thus, a court can consider a claim that a party was fraudulently induced to include an arbitration clause in a contract, but not a claim that an entire contract was the product of fraud. *Daisy Mfg. Co.*, 29 F.3d at 396–97; *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir.1985); *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 728 (8th Cir.1976). As counterin-

tuitive as it may seem, under *Prima Paint* a dispute over the making of a contract can arise out of that same contract, and thus be subject to arbitration. *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir.1993).

The Houlihans' factual allegations of fraud cannot fairly be limited to the making of the arbitration clause. Indeed, Agnes Houlihan stated that she was misled into believing that she was not executing a contract at all. Edward Houlihan, who evidently at least glanced at the customer agreement, alleges that Offerman's letter recited false reasons for requiring his signature on the account application and fraudulently omitted the terms of the customer agreement. The arbitration clause, however, was only one of nineteen provisions in the agreement. Edward Houlihan does not contend that he understood all but the arbitration clause nor does he present any rationale for concluding that the alleged misrepresentations relate only to the arbitration clause. Because the Houlihans' claims of fraud in the inducement relate to the contract as a whole, they are subject to mandatory arbitration. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir.1988); *In re Oil Spill by the "Amoco Cadiz" etc.*, 659 F.2d 789, 794–95 (7th Cir.1981); *N & D Fashions, Inc.*, 548 F.2d at 728.

■■■ Even if the Houlihans' allegations of fraud related specifically to the arbitration clause, the result would be the same. Assuming for the sake of argument that Offerman's letter can be read as an affirmative misrepresentation concerning only the arbitration clause, such a misrepresentation would not give rise to a cause of action for fraud. Under Minnesota law,[3] a misrepresentation renders a contract voidable only if it is reasonably relied upon. *Dollar Travel Agency, Inc. v. Northwest Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn.Ct.App.1984). Reliance on implied misrepresentations is unjustifiable, for purposes of a fraud claim, if a

---

**3.** State law is applicable to the arbitrability dispute if that law arose to govern issues concerning the validity, revocability or enforceability of contracts generally. *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96

L.Ed.2d 426 (1987). The 1992 customer agreement provides that it is to be interpreted under Minnesota law. Assuming the Houlihans attack only the arbitration clause, we would follow the contractual choice of law provision.

written contract provision explicitly states a fact completely contradictory to the claimed misrepresentation. *See Veit v. Anderson,* 428 N.W.2d 429, 433 (Minn.Ct.App.1988); *Johnson Bldg. Co. v. River Bluff Dev. Co.,* 374 N.W.2d 187, 194 (Minn.Ct.App.1985). We do not think that Offerman's letter, which did not describe the contents of the brokerage application at all, discharged the Houlihans' duty to read the document they signed. *See Cohen,* 841 F.2d at 287 (requiring party to read the contract is especially appropriate where explicit language of contract directly contradicts alleged misrepresentation). The Houlihans' reliance is even more suspect because Edward Houlihan noticed the disputed clause, but chose not to read it.[4]

We have considered the Houlihans' other defenses to Offerman's motions and find them to be without merit.[5] The Houlihans do not assert that their dispute is outside the scope of the broad arbitration clause in the 1992 customer agreement. Therefore, the district court should have granted Offerman's motions to compel arbitration and to stay court proceedings.[6]

## III. CONCLUSION

For the reasons discussed above, we reverse the orders of the district court.

---

4. The Houlihans' reliance on *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51 (3d Cir. 1980), is misplaced. In that case, the court held that there was no "meeting of the minds" between a manufacturer and its supplier when the manufacturer's product manager, who did not have actual or apparent authority to bind the manufacturer and did not intend to do so, signed a sales invoice containing an arbitration clause. Here, there is no allegation that the Houlihans lacked authority to execute the customer agreement.

5. The Houlihans' lack of consideration defense applies to the contract as a whole and is clearly a

matter for the arbitrator. *Prima Paint,* 388 U.S. at 404, 87 S.Ct. at 1806. Furthermore, we have held that arbitration clauses in brokerage agreements are not inherently unconscionable. *Webb v. R. Rowland & Co.,* 800 F.2d 803, 807 (8th Cir.1986). The Houlihans have not demonstrated that the arbitration clause at issue was unconscionable in any way.

6. The Houlihans moved to strike certain regulations, SEC releases and court decisions from the Joint Appendix. We have not relied on these portions of the Joint Appendix to reach our decision and now deny the Houlihans' motion as moot.