**FLEET TIRE SERVICE OF NORTH LITTLE ROCK, INC., Plaintiff,**

v.

**OLIVER RUBBER COMPANY, Defendant.**

No. LR–C–96–196.

United States District Court,
E.D. Arkansas,
Western Division.

Nov. 25, 1996.

G. Steve Napper, Little Rock, AR, for plaintiff.

Peter G. Kumpe, Williams & Anderson, Little Rock, AR, for defendant.

## ORDER

WOODS, District Judge.

This lawsuit arises out of a contract dispute involving an alleged agreement under which the plaintiff was granted the exclusive right to use the defendant's patented tire retreading system within limited geographic areas of Arkansas. The plaintiff moved for a preliminary injunction to prevent defendant from licensing other businesses to use the defendant's retreading system within areas it claims exclusive right to the use of the system.

The defendant moved to stay the current proceedings and to refer to arbitration any claims or disputes arising out of the contract, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. According to the defendant, its agent Bill Schweer's written promise to grant the plaintiff exclusive use of its retreading system and the 1995 agreement between the parties for the sale of retreading equipment costing in excess of $100,000 are, at most, modifications to the original contract executed in 1990.

The 1990 agreement contains a provision requiring parties to submit any claims for breach of contract to arbitration. The 1990 agreement also specifically provides that the plaintiff's right to the system is non-exclusive.

The plaintiff moved to depose Bill Schweer, the defendant's agent who executed the written promise purporting to grant plaintiff exclusive right to use the retreading system. That motion was granted and Mr. Schweer has now been deposed.

The parties have agreed that interpretation of whether agreements made subsequent to the original 1990 contract were intended as modifications to that contract—and thus subject to mandatory arbitration—or as separate contracts, is for the Court to decide. The hearing on the preliminary injunction was stayed until the Court decided the question of mandatory arbitration.

■ Congress passed the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate." *Dean Witter* *Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985). Federal policy now favors arbitration and doubts relating to the scope of arbitrable issues "should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). "[A]lthough the [Federal Arbitration Act] favors expanded arbitration coverage when there is a question regarding scope, arbitration will not be imposed upon a party unless that party has agreed to this settlement procedure." *Case International Company v. T.L. James and Company, Inc.,* 907 F.2d 65, 66 (8th Cir.1990). Federal law "does not require parties to arbitrate when they have not agreed to do so...." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

■ Before a party can be compelled to arbitrate under the Federal Arbitration Act, the trial court must engage in a "limited inquiry" to determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the specific dispute falls within the scope of the parties' agreement. *Houlihan v. Offerman & Company, Inc.,* 31 F.3d 692, 694–95 (8th Cir.1994), citing *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994).

■ In this case, there is no dispute that a valid arbitration agreement exists. Nor is there a dispute as to the fact that Mr. Schweer had the authority to bind the company when he signed the 1995 Agreement granting Fleet exclusive rights to the Oliver system within specific geographic areas. The question is whether the current dispute involving the 1995 exclusivity agreement falls within the scope of the 1990 agreement. The answer to this turns on whether the parties intended the 1995 agreement to be a modification of their 1990 agreement, or whether it was meant to be a separate agreement.

The 1990 agreement includes the following language in paragraph 10:

Any controversy or claim arising out of or relating to this Agreement or any breach of its terms shall be settled by arbitration in accordance with the rules of the Ameri-

can Arbitration Association, and judgment upon the award tendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . . The arbitration provided for in this Section 10 shall be the exclusive remedy for any dispute between Oliver and Licensee, as a substitute for any and all legal remedies and proceedings that would otherwise be available to them.

Thus, if the 1995 Agreement is a modification of the 1990 agreement, then Fleet is bound by the arbitration clause quoted above. On the other hand, if the 1995 Agreement is not part of the 1990 agreement, then its arbitration clause will, of course, not be imposed since the 1995 agreement contains no arbitration clause.

Mr. Schweer's deposition reveals that, although he had worked for Oliver since 1990 (Dep. p. 5), he did not think that Oliver ever agreed to exclusivity agreements (Dep. p. 11). When Fleet requested such an arrangement, Mr. Schweer told Fleet that Oliver would not agree to an exclusivity clause. At the urging of Fleet, Mr. Schweer telephoned his supervisor, Jim Peterson, who initially agreed that, "We don't do that." (Dep. p. 11). Then, Mr. Peterson told Mr. Schweer to agree to an exclusivity clause within a fifty-mile radius of Fleet's stores. Mr. Schweer testified that he was "floored" and "surprised" by this instruction from Mr. Peterson. He had never before entered into an exclusivity agreement on behalf of Oliver (Dep. p. 11).

After his telephone conversation with Mr. Peterson, Mr. Schweer asked one of Fleet's secretaries to type "what he [Mr. Peterson] wanted" which was "basically what was discussed on the phone." (Dep. p. 12).

Subsequently, Mr. Peterson contended that he did not know about the exclusivity agreement with Fleet and that he had never seen the written documentation signed by Mr. Schweer (Dep. p. 15). Mr. Schweer was "reprimanded for entering into this agreement." (Dep. p. 17). Mr. Schweer testified that his supervisors "chewed [him] out" for entering into the agreement (Dep. p. 17).

Apparently, the exclusivity agreement was unusual as evidenced by the testimony of Mr. Schweer and by the fact that the 1990 agreement was not on a pre-printed form, but rather was drafted by Mr. Schweer in accordance with Mr. Peterson's instructions. There is no reference in the 1995 agreement to the 1990 agreement.

Perhaps more persuasive, the 1990 agreement contains the following clause:

9.5. No amendment or modification of this Agreement shall be effective unless made in writing and signed by Oliver *and Licensee.* [Emphasis supplied.]

It is difficult for Oliver to contend that the 1995 agreement was a modification of the 1990 agreement since, by its explicit terms, the 1990 agreement was subject to modification only on condition that the modification be signed by both parties. It is undisputed that only Mr. Schweer's signature appears on the 1995 agreement. Thus, the 1995 agreement is either a separate agreement or a failed attempt to modify the 1990 agreement. In the latter case, the 1995 agreement would be of no legal significance whatsoever.

Oliver argues that the 1995 agreement must be read as a part of the 1990 agreement since the 1995 agreement arises out of or is related to the original (1990) agreement. Oliver contends that the arbitration clause in the 1990 agreement is broad enough to cover the subsequent exclusivity agreement.

■ In this case, the controversy between the parties involves only the second (1995) agreement which, if valid, supersedes the non-exclusivity clause in the 1990 agreement. There is no claim involving breach of the original contract. Thus, the Court finds the 1995 agreement to be collateral to the 1990 agreement.

[W]hen a party resisting the enforcement of an arbitration clause demonstrates that the dispute issue is collateral in nature, arbitration of that dispute cannot be compelled merely based upon the existence of an arbitration clause in the main agreement.

*Wilson v. Subway Sandwiches Shops, Inc.,* 823 F.Supp. 194 (S.D.N.Y.1993).

Accordingly, the Motion to Dismiss or Stay Pending Arbitration is denied. The Clerk is

directed to set this matter immediately for a hearing on the preliminary injunction.