[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM ON MOTION TO STAY AND COMPEL ARBITRATION
FACTS
On September 20, 2000, the plaintiff, Patricia Emond, filed the present action as a small claims matter against Gateway alleging that Gateway negligently advised her to reformat the hard disk drive of her computer. On December 4, 2000, Gateway moved to transfer the matter to the regular docket and that motion was granted on December 12, 2000.
The plaintiff purchased a personal computer from Gateway in December of 1997. Pursuant to the plaintiff's purchase of her Gateway computer, she accepted Gateway's Standard Terms and Conditions Agreement.
Paragraph 10 of that agreement contained the following language:
 10. DISPUTE RESOLUTION. Any dispute or controversy arising out of or relating to this Agreement, its interpretation or any related purchase shall be resolved exclusively and finally by arbitration. . . .
CT Page 3872
At the same time that the plaintiff contracted to purchase the computer, the plaintiff purchased a "site service agreement." The site service agreement contains no specific language providing for arbitration of dispute.
The plaintiff alleges that her claim against Gateway is grounded in its negligence in failing to fulfill its obligations under the "site service agreement.
Gateway claims that any obligations which it has to the plaintiff arising from the "site service agreement," are nevertheless covered by the broad arbitration clause contained in paragraph 10 of the "standard terms and conditions agreement."
DISCUSSION
Because this is a transaction occurring in interstate commerce, Gateway's request to compel arbitration is made pursuant to9 U.S.C. § 1, et. seq. of the Federal Arbitration Act. Nevertheless, the issues presented in the case are not substantially different from what they would be under the Connecticut law pertaining to arbitration.
The Act provides that the issue must be referable to arbitration in order for the court to order arbitration. It is only upon the court's satisfaction that the issue involved in such a suit or proceeding is referable to arbitration under the agreement that the court shall stay the proceedings and order arbitration 9 U.S.C. § 3. When the parties refuse to arbitrate, the court should hear the parties and shall make an order directing the parties to proceed to arbitration only "upon being satisfied that the making of an agreement for arbitration or the failure to comply therewith is not an issue 9 U.S.C. § 4."
The Federal Arbitration Act "expresses a strong federal policy in favor of arbitration in . . . commercial disputes. . . ." National Union FireInsurance Co. v. Belco Petroleum Corp., 88 F.3d 129, 133 (2nd Cir. 1996). The Federal Arbitration Act requires the court to enter an order compelling arbitration against the party who refuses to arbitrate claims that are within the arbitration provision if the provision is covered by the Federal Arbitration Act and is enforceable. Shearson-American Exp.,Inc. v. McMahon, 482 U.S. 220, 226 (1987). The United States Supreme Court has held that upon proper application and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court shall "stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement."Moses H. Cone Memorial Hospital v. Mercury Construction Group, 460 U.S. 1,26 (1983). CT Page 3873
On a motion to compel arbitration, the court's inquiry is limited to determining (1) whether a valid agreement to arbitrate exists, and, (2) whether the specific dispute falls within the scope of the agreement.Houlihan v. Offerman Co., Inc., 31 F.3d 692 (8th Cir. 1994).
The Court finds that both factors are present here. The plaintiff would attempt to bifurcate the "standard terms and condition agreement," from the "site service agreement." It is undisputed that the service agreement was bought in conjunction with the purchase of the computer. This court is convinced that the site service agreement is a "related purchase, " which "shall be resolved exclusively and finally by arbitration."
The plaintiff attempts to create ambiguity in the meaning of the purchase contract. She appears to argue that it is in some manner inherently unfair that the plaintiff be bound to arbitrate the site service agreement when that agreement contains no specific obligation to arbitrate. The plaintiff sites no court authority for its position. Conversely the defendant sites Ms. Dealer Service Corps. v. Franklin,177 F.3d 942 (1999) for a fact pattern bearing marked similarities to the dispute between this court. In May of 1996, Sharon Franklin and Jim Burke Motors Inc., executed a Buyers Order whereby Franklin contractually agreed to purchase a vehicle from Jim Burke. The Buyers Order incorporated by reference a "Retail Installment Contract," in which Franklin was charged $990.00 for a service contract through Ms. Dealer. The Buyers Order contains an arbitration clause, stating: "buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between buyer and Jim Burke Motors, Inc. arising out of or in connection with the purchase of this vehicle will be resolved by arbitration. . . ." Ms. Dealer is not a signatory to either the Buyers Order or the Retail Installment Contract. After taking possession of the vehicle, Franklin discovered several defects in the car. She filed suit in Alabama state court against Jim Burke, Ms. Dealer and Chrysler Credit Corporation, asserting claims for breach of contract, breach of warranty, fraud and conspiracy. All of the claims against Ms. Dealer arise out of the $990.00 charge identified in the Retail Installment Contract for the service contract. The court found that Franklin's claims against Jim Burke and her claims against Ms. Dealer were both "based on the same facts and are inherently inseparable."
Relying on the arbitration clause in the Buyers Order, Ms. Dealer filed a petition in the federal district court to compel Franklin to arbitrate her claims against it. The district court originally granted the petition. On reconsideration, however, the district court dismissed the petition on the ground that Ms. Dealer was not a signatory to the Buyers Order and, thus, did not have standing to compel arbitration, Ms. Dealer CT Page 3874 subsequently appealed.
In analyzing Ms. Dealers right to enforce arbitration, the Eleventh Circuit wrote as follows:
 "In enacting the FAA, Congress demonstrated a liberal federal policy favoring arbitration agreements . . . Therefore, questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations . . . Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit . . . As a general rule, therefore, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability . . ."
[citations and internal quotation marks omitted] Ms. Dealer177 F.3d 942.
The Eighth Circuit concluded that Franklin's suit against Ms. Dealer was controlled by the arbitration requirement contained in the "Buyers Order."
This court concludes that the plaintiff, Patricia Emond's, dispute with Gateway under the terms of her service agreement are controlled by the general terms requiring arbitration contained in Gateway's "standard terms and condition agreement."
For the foregoing reasons, the plaintiff's proceedings against Gateway 2000 are stayed and the plaintiff is directed to submit the dispute to arbitration.
By the Court,
Kevin E. Booth Judge of the Superior Court