**AIRTEL WIRELESS, LLC, Plaintiff,**

v.

**MONTANA ELECTRONICS COMPANY, INC., Dale Hickman, and Angie Hickman, Defendants.**

**No. Civ.04–3128 DWF FSM.**

United States District Court, D. Minnesota.

Jan. 7, 2005.

Bruce J. Douglas, and Chris M. Hefflebower, Larkin Hoffman Daly & Lindgren, Bloomington, MN, for Plaintiff.

Michael L. Dolan, and Jennifer K. Eggers, Oppenheimer Wolff & Donnelly, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 10, 2004, pursuant to Defendants Montana Electronics Company, Inc.'s ("MECO"), Dale Hickman's and Angie Hickman's (collectively referred to as "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction and Plaintiff Airtel Wireless, LLC's ("Airtel") Motion to Compel Arbitration, Stay Action, and Enjoin Parallel Proceeding. For the reasons set forth below, the Court denies Defendants' motion and grants Plaintiff's motion as explained below.

### Background

Both parties are involved in the electronics-communications industry. Airtel is a limited liability company organized under the laws of the State of Minnesota and with its principal place of business in Nevada. Airtel asserts that its executive offices, its Chief Financial Officer and the majority of its shareholders are located in Minnesota. Airtel is a licensee and manager of certain licenses issued by the Federal Communications Commission ("FCC") and provides cellular telephone and twoway radio service through agents and distributors.

MECO is a Montana corporation involved in the sale and service of electronic communication devices, such as two-way radios, beepers, and cellular phones. MECO's operations are located in Missoula, Montana. Defendants Angie Hickman and Dale Hickman are the owners of

MECO and are Montana residents. Defendants claim that their subscriber base of current and former customers is one of the largest, if not the largest, in the state of Montana.

In early 2003, James Brock, Airtel's Chief Manager, placed a call to MECO to inquire about the potential use of MECO's Montana communication sites. Brock traveled to Montana on several occasions and, in approximately May 2003, Brock proposed that Defendants sell Airtel products and services.

On June 10, 2003, Airtel and MECO entered into an Independent Sales Agent Agreement ("ISAA"), which permits MECO to sell Airtel products and services. Under the terms of the ISAA, once Airtel accepts a customer's contract for cell phone service, Airtel remits to MECO a fee for providing Airtel with the customer.

On July 20, 2003, Dale and Angie Hickman, as individuals, entered into an Independent Subscribers Provider Agreement ("ISPA") with Airtel. The parties disagree over who initiated the negotiations which led to the execution of the ISPA. Airtel claims that the Hickmans approached Airtel and requested that another agreement be executed. Defendants, on the other hand, claim that after learning the extent of MECO's substantial customer base, Airtel proposed modifying the ISAA to enhance the revenue to MECO and include a buyout package. There is no dispute that the ISPA included a contract duration of 20 years, an increase in the "buy-out" payment in the event of a change of control of Airtel, and 33% residual fees instead of an up-front finders' fee. In addition, the ISPA contains a termination provision, which provides that the ISPA can only be terminated "by mutual agreement between" Airtel and the Hickmans. (*See* Declaration of Chris M. Hefflebower with Exhibit List ("Hefflebower Decl.") ¶ 3, Ex. B ("ISPA") at ¶ 3.)

Both the ISAA and the ISPA (collectively referred to as the "Agreements") contain identical arbitration provisions, requiring the parties to engage in binding arbitration in Minneapolis, Minnesota, for any controversy or claim arising out of or relating to the agreement, its breach, or the parties' employment relationship. (*See* Hefflebower Decl. ¶ 2, Ex. A ("ISAA") at ¶ 14(a); ¶ 3, Ex. B ("ISPA") at ¶ 14(a).) The Agreements provide specifically:

14.) *Dispute Resolution*—

(a) Any controversy or claim (other than one for injunctive relief or specific performance) arising out of or relating to this Agreement, or its breach, or to the employment relationship between the Employee and the Company, shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota. Such arbitration shall proceed in accordance with the then governing rules of the National Arbitration Forum (NAF). Judgment upon the award rendered may be entered and enforced in any court of competent jurisdiction. It is agreed the parties shall choose a single, neutral arbitrator from among a panel of not less than seven (7) proposed arbitrators, and that the parties may have no more than two (2) panels of arbitrators presented to them by the NAF. The parties agree that they shall each bear their own costs associated with the arbitration, including any filing fee to be paid by them and their own legal counsel expenses. The parties further agree that they shall share equally in the reasonable costs and the fees of the neutral arbitrator.

(Hefflebower Decl.¶ 2, Ex. A ("ISAA") at ¶ 14(a); ¶ 3, Ex. B ("ISPA") at ¶ 14(a).)

The Agreements also include a remedy section which provides Airtel with the

right to sue in equity to enjoin the Hickmans or MECO from breaching or threatening to breach any covenants or provisions as set forth in the Agreements and allows for reasonable attorney's fees. The Agreements provide specifically:

> *Remedy*—Agent understands that the Company may not have an adequate remedy at law for the threatened breach or breach of any covenant or provision set forth in this Agreement and agrees that in the event of such breach or threatened breach, Agent will reimburse the Company for its reasonable attorneys' fees and costs incurred in enforcing its rights under this Agreement. Agent further agrees that in the event of such a breach or threatened breach, in addition to other remedies which may be available to it, the Company will have the right to sue in equity and enjoin agent from breaching or threatening to breach any covenant of [sic] provision set forth in this Agreement.

(Hefflebower Decl. ¶ 2, Ex. A ("ISAA") at ¶ 10; ¶ 3, Ex. B ("ISPA") at ¶ 10.)

In addition, both Agreements contain a governing law, venue and jurisdiction provision. The Agreements provide that Minnesota law will apply and that venue and jurisdiction will be in the state or federal courts located in Hennepin County, Minnesota. Specifically, the Agreements read:

> 14.) —(b) *Governing Law, Venue, Jurisdiction*—This Agreement, all exhibits hereto, and all acts and transactions pursuant or relating hereto, and all rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with, the domestic laws of the State of Minnesota without giving effect any choice of law provision or rule (whether in the State of Minnesota or any other jurisdiction that would cause application of laws of any jurisdiction other than the State of Minnesota); provided, however, that Agent acknowledges and agrees that it is not licensed to do business in the State of Minnesota, it does not transact business in the State of Minnesota, does not maintain a place of business in the State of Minnesota and is not a resident of the State of Minnesota. In order to induce the parties to accept this Agreement, and as a material part of the consideration therefore: (i) the parties hereto agree that, subject to the provisions of sub-paragraph (a) of this Paragraph, all actions or proceedings relating to the subject matter of this Agreement, whether to compel or enjoin arbitration or for injunctive relief to maintain the status quo pending arbitration, will be litigated in courts, whether state or federal, located within Hennepin County, Minnesota; (ii) the parties consent to the exclusive jurisdiction of such courts and consent to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; (iii) the parties agree that venue is proffered in Hennepin County, Minnesota; and (iv) the parties waive any and all rights that they may have to transfer or change the venue of any such action or proceeding.

(Hefflebower Decl. ¶ 2, Ex. A ("ISAA") at ¶ 14(b); ¶ 3, Ex. B ("ISPA") at ¶ 14(b).)

On June 3, 2004, Airtel provided written notice of termination of the ISAA. On June 7, 2004, Defendants, asserted through counsel that the ISAA had been superseded by the ISPA and that Airtel's notice of termination was improper. (*See* Hefflebower Decl. ¶ 6, Ex. E.) Also on June 7, 2004, Angie Hickman, on behalf of MECO, wrote to Airtel stating the following: "Please be advised, effective immediately cancel all Airtel phones and service for Montana Electronics Co., Inc. We no long-

er have use for your service." (Hefflebower Decl. ¶ 5, Ex. D.)

On June 16, 2004, Airtel sent MECO a letter responding to Angie Hickman's June 7, 2004, letter, which read in part: "As we understand the letter, your client has terminated, effective immediately, the independent subscriber provider agreement dated July 20, 2003, which was referenced by you in your letter dated June 7, 2004." (Affidavit of Michael L. Dolan in Support of Defendants' Response to Plaintiff's Motion to Compel, Stay Action, and Enjoin Parallel Proceeding ("Dolan Aff.") ¶ 2, Ex. A.) That same day, counsel for MECO responded and informed Airtel that its understanding of Angie Hickman's June 7, 2004, letter was incorrect, that the Hickmans did not agree to terminate the ISPA, and that the Hickmans expected Airtel to honor its contractual obligations under the ISPA. (*See* Dolan Aff. ¶ 3, Ex. B.) Thereafter, Airtel ceased all communications with Defendants.

On July 1, 2004, Defendants' counsel provided Airtel with notice that Airtel was in breach of the ISPA and explaining that if Defendants' dealership was not fully reinstated by a certain date, an action would be filed. (*See* Hefflebower Decl. ¶ 7, Ex. F.) On July 2, 2004, Airtel filed, but did not serve, the Complaint in this action (the "Minnesota action"). In the Complaint, Airtel sought an Order compelling arbitration and staying and/or enjoining all judicial proceedings pending arbitration. Airtel further asserted that "the parties disagree as to which of the two Agreements is currently in force or effect." (Complaint at ¶ 22.) On July 8, 2004, Airtel sent another letter to counsel

for Defendants asserting that Angie Hickman's June 7, 2004, letter "makes clear that she terminated the parties' Independent Sales Agent Agreement and/or Independent Subscriber Provider Agreement...." [1] (Dolan Aff. ¶ 4, Ex. C.) Airtel did not respond to Defendants' June 7, 2004, letter demanding continued performance of the ISPA and did not mention the fact that Airtel had already filed a Complaint in Minnesota. (*Id.*)

On July 21, 2004, the Hickman Defendants filed a complaint in the United States District Court for the District of Montana ("Montana action").[2] The single count Complaint seeks specific performance or injunctive relief in light of Airtel's purported termination of the ISPA. (*See* Hefflebower Decl. ¶ 8, Ex. G.) Specifically, Angie and Dale Hickman seek an order enjoining Airtel from unilaterally terminating the ISPA or an order compelling Airtel to perform the terms of the ISPA. (*Id.*) On August 4, 2004, Airtel served the Minnesota Complaint on Defendants. Airtel answered the Montana Complaint on August 17, 2004.

On August 23, 2004, Airtel filed motions in both the Montana and Minnesota proceedings. In Montana, Airtel filed a motion to dismiss/stay the Montana action on the ground that the Minnesota action was filed first.[3] On the same day, Airtel filed this Motion to compel arbitration, stay all judicial proceedings, and enjoining the Montana action. On October 25, 2004, Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction. Defendants assert that the forum selection provisions of both the ISAA and the ISPA are invalid as a matter of Montana and Minnesota law

---

1. The letter is incorrectly dated June 8, 2004.

2. The Montana complaint was served on July 28, 2004.

3. On December 27, 2004, the United States District Court for the District of Montana issued an order transferring the Montana action to the District of Minnesota.

and therefore are not terms of the parties' agreements. Defendants further assert that without a valid forum selection clause, they do not have sufficient minimum contacts with this forum for this Court to exercise personal jurisdiction. Airtel, on the other hand, asserts that Defendants have consented and are subject to the jurisdiction of Minnesota because they entered into a contract that contains a valid forum selection clause. Both motions are now before the Court.

## Discussion

## I. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *See Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *See Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to rule on its merits.

### 1. Choice of Law Provision

■ First, the parties dispute whether Minnesota or Montana law should apply to this case. Defendants assert that Minnesota's choice-of-law rules mandate that this Court apply Montana's law in determining whether the forum selection clauses are valid. Airtel disagrees and asserts that Minnesota law applies because the parties specifically contracted that Minnesota law would apply and the choice-of-law provisions in the Agreements must be enforced under Minnesota law.

■ The parties contracted that Minnesota law applies to their disputes, without regard to choice-of-law principles or rules. Both Agreements provide in part:

> This Agreement, all exhibits hereto, and all acts and transactions pursuant or relating hereto, and all rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with, the domestic laws of the State of Minnesota without giving effect any choice of law provision or rule (whether in the State of Minnesota or any other jurisdiction that would cause application of laws of any jurisdiction other than the State of Minnesota);

(Hefflebower Decl. ¶ 2, Ex. A ("ISAA") at ¶ 14(b); ¶ 3, Ex. B ("ISPA") at ¶ 14(b).) Minnesota courts generally enforce choice of law provisions, unless there is evidence that the parties did not negotiate such a provision in good faith and did so with an intent to evade the law. *See Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 568 (8th Cir.1982); *see also Hagstrom v. American Circuit Breaker Corp.,* 518 N.W.2d 46, 48 (Minn.Ct.App.1994), *review denied* (Minn. 1994) (citation omitted). In its evaluation of good faith, a court must consider whether there is "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). "Standing alone, a choice-of-law clause does not convey jurisdiction over a

contracting party. Such a clause, however, is a heavily weighed factor in deciding whether [a party] purposefully invoked the benefits and protections of Minnesota's laws. Choice-of-law clauses demonstrate a 'defendant's deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.' " *St. Paul Fire and Marine Ins. Co. v. Courtney Enter., Inc.,* 108 F.Supp.2d 1057, 1061 (D.Minn.2000) (quoting *Edmonton World Hockey Enter., Ltd. v. Abrahams,* 658 F.Supp. 604, 607 n. 1. (D.Minn.1987)).

Generally, Minnesota courts only engage in a conflicts-of-law analysis when there is no choice-of-law provision in the dispute. *See, e.g., Hagstrom,* 518 N.W.2d at 48; *see generally Guidant Sales Corp. v. Niebur,* Civ. 01–1772, 2001 WL 1636502 at *6 (D.Minn.2001). Defendants have not provided any relevant legal authority that convinces the Court to depart from Minnesota's traditional practice of enforcing contractual choice-of-law provisions. By signing both of the Agreements, Defendants clearly agreed to a choice-of-law provision designating Minnesota law. In addition, upon the signing of the Agreements, Defendants also agreed to work with a Minnesota corporation whose principal executive offices and key personnel were located in Minnesota. The Court finds that Defendants purposefully availed itself of the benefits and protections of Minnesota's laws. Therefore, Minnesota is not without relation to the parties or the dispute. Most importantly, Defendants implicitly agreed to the exercise of personal jurisdiction by Minnesota courts by entering into an arbitration agreement with a forum selection clause.[4] *See Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 726 (8th Cir.2001) (citing *Burger King*

*Corp. v. Rudzewicz,* 471 U.S. 462, 472, n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) and *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)) (explaining that the enforcement of forum-selection provisions that are not "unreasonable and unjust" and that were obtained through "freely negotiated" agreements does not offend due process). Accordingly, this Court finds that the enforcement of the parties' choice-of-law provision here is neither arbitrary nor fundamentally unfair. The Court notes that it need not, and therefore declines to, engage in a conflicts-of-law analysis in reaching this conclusion.

### 2. Forum Selection Clause

■ Defendants assert that under Minnesota law, the forum selection clause contained in the Agreements is invalid. Specifically, Defendants claim that the forum selection clause is invalid because Minnesota is a seriously inconvenient forum for arbitration and that enforcing the forum selection clause would violate Montana's public policy.

■ Forum selection provisions should be enforced unless it is shown by the party seeking to avoid the agreement that it would be unfair or unreasonable. *See Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.,* 320 N.W.2d 886, 890 (Minn.1982). Factors demonstrating unreasonableness include: (1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; and (3) the agreement is "otherwise unreasonable."[5] *Id.*

Defendants bear a heavy burden to demonstrate that the location of the arbitration is a seriously inconvenient location. More-

---

4. *See* section I.A.2 below, wherein the Court finds that the parties' forum-selection clause is enforceable.

5. Defendants do not argue that the forum selection clauses are of adhesion.

over, the inconvenience factor is "tied to the question of whether the clause was equally bargained for, since the remoteness of the selected forum might suggest that the agreement was an adhesive one...." *Hauenstein*, 320 N.W.2d at 890. Defendants assert that Minnesota would be seriously inconvenient for the Hickmans because the enforcement of the forum selection clause here would result in two lawsuits, one here and one in Montana, involving the same or similar issues.

The Court finds that Defendants have not demonstrated that Minnesota would be a seriously inconvenient or an otherwise unreasonable forum for arbitration. Here, the parties freely entered into two separate Agreements, each containing identical forum selection clauses designating Minnesota as the proper forum for disputes. In addition, both Agreements contain express acknowledgment of Defendants' relationship, or lack thereof, with the state of Minnesota:

> ... that Agent acknowledges and agrees that it is not licensed to do business in the State of Minnesota, it does not transact business in the State of Minnesota, does not maintain a place of business in the State of Minnesota and is not a resident of the State of Minnesota.

(Hefflebower Decl. ¶ 2, Ex. A ("ISAA") at ¶ 14(b); ¶ 3, Ex. B ("ISPA") at ¶ 14(b).)

Defendants certainly foresaw the possibility of litigating in Minnesota. In addition, the location and convenience of the parties and witnesses is of minor consequence, seeing as the parties designated Minnesota as the forum for resolution of their disputes and because deposition testimony can be taken locally. The fact that Defendants filed a lawsuit in Montana does not demonstrate that arbitration in Minnesota would be inconvenient or otherwise unreasonable. To hold otherwise, under the circumstances presented here, would allow a party to avoid a valid forum selection clause simply by filing in a different jurisdiction. Moreover, Defendants cannot now complain about the inconvenience of the forum selection clause they freely entered into and for which they received valid consideration.

While Defendants may be correct is asserting that Montana law is hostile towards out-of-state choice-of-law and forum selection provisions, Defendants ignore the fact that Minnesota courts routinely enforce such clauses and that there is no public policy in Minnesota that contravenes the enforcement of such a clause. Accordingly, the Court finds that the forum selection clause is neither seriously inconvenient nor otherwise unreasonable. Therefore, this Court can properly entertain personal jurisdiction over Defendants. *See, e.g., Dominium*, 248 F.3d at 726 ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause.") (citing *Burger King*, 471 U.S. at 472 n. 14, 105 S.Ct. 2174; *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907).[6]

## II. Motion to Compel Arbitration, Stay Action and Enjoin Parallel Proceeding

### A. Standard of Review

 Having determined that the Court can exercise jurisdiction over Defendants, it now turns to Airtel's Motion to Compel Arbitration. Through the Federal Arbitration Act ("FAA"), Congress has established a strong federal policy in favor of arbitration. *See Shearson/Am. Express,*

---

**6.** Both parties agree that even without minimum contacts, a party can consent to jurisdiction through execution of a valid forum selection clause.

*Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *see also Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir.1994). In a petition to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *See Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868 (8th Cir.2004); *Houlihan*, 31 F.3d at 694–95. Defendants do not dispute that the arbitration clause is valid. Therefore, the Court will consider only whether the arbitration agreement encompasses the current dispute.

### B. Scope of the Arbitration Clause

■ In the Montana action, Defendants are seeking an order enjoining Airtel from unilaterally terminating the ISPA or an order compelling Airtel to perform the terms of the ISPA. (Hefflebower Decl. ¶ 8, Ex. G.) The relief they seek is in response to Airtel's purported termination of the ISPA; therefore, Defendants are essentially seeking relief on the merits of a breach of contract claim.

Airtel asserts that the Montana action falls within the scope of the arbitration provision, which reads in part:

> Any controversy or claim (other than one for injunctive relief or specific performance) arising out of or relating to this Agreement, or its breach, or to the employment relationship between the Employee and the Company, shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota.

(Hefflebower Decl. ¶ 2, Ex. A ("ISAA") at ¶ 14(a); ¶ 3, Ex. B ("ISPA") at ¶ 14(a).) As to the language excluding actions for injunctive relief or specific performance, Airtel asserts that when the Agreements are read as a whole, it is clear that only Airtel has the option of proceeding in court for an injunction or specific performance and only then for the purpose of maintaining the status quo pending arbitration. In support, Airtel asserts that Paragraph 10 of the Agreements not only grants Airtel the right to sue in equity, but it also prohibits Defendants from seeking injunctive relief or specific performance. Paragraph 10 of the Agreements provides:

> *Remedy*—Agent understands that the Company may not have an adequate remedy at law for the threatened breach or breach of any covenant or provision set forth in this Agreement and agrees that in the event of such breach or threatened breach, Agent will reimburse the Company for its reasonable attorneys' fees and costs incurred in enforcing its rights under this Agreement. Agent further agrees that in the event of such a breach or threatened breach, in addition to other remedies which may be available to it, the Company will have the right to sue in equity and enjoin agent from breaching or threatening to breach any covenant of [sic] provision set forth in this Agreement.

Defendants, on the other hand, argue that Paragraph 14(a) unambiguously excludes claims for injunctive relief and specific performance from arbitration and therefore excludes the claims asserted in the Montana action. Moreover, Defendants assert that there is no provision in the Agreements that prohibits Defendants from seeking injunctive relief or specific performance. Specifically, Defendants assert that Paragraph 10 is essentially an attorney fees provision that does not in any way limit the rights of Defendants. Defendants assert that to read Paragraph 10 in a way that would limit Defendants' right to seek injunctive relief would be inherently inconsistent with Paragraph

14(b) of the Agreements, which provides in part:

> ... all actions or proceedings relating to the subject matter of this Agreement, whether to compel or enjoin arbitration or for injunctive relief to maintain the status quo pending arbitration, will be litigated in courts, whether state or federal, located within Hennepin County, Minnesota; (ii) the parties consent to the exclusive jurisdiction of such courts and consent to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; (iii) the parties agree that venue is proffered in Hennepin County, Minnesota; and (iv) the parties waive any and all rights that they may have to transfer or change the venue of any such action or proceeding.

Because Paragraph 14(b)'s provisions with respect to where litigation is to take place is not limited to Airtel and refers instead to the "parties," Defendants assert the Agreements specifically envision that both Airtel and Defendants could bring litigation.

▮▮▮ Principles of contract law apply to arbitration agreements. *See Lucas v. American Family Mut. Ins. Co.,* 403 N.W.2d 646, 648 (Minn.1987). The construction and effect of a contract is a question of law unless the contract is ambiguous. *See Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979).[7] Unambiguous contract language must be given its plain and ordinary meaning. *See Current Tech. Concepts, Inc. v. Irie Enters., Inc.,* 530 N.W.2d 539, 543 (Minn. 1995). "A contract must be interpreted in a way that gives all of its provisions meaning." *Id.* In interpreting a contract, the Court must avoid any interpretation that would render a provision meaningless. *See Indep. Sch. Dist., No. 877 v. Loberg Plumbing & Heating, Co.,* 266 Minn. 426, 123 N.W.2d 793, 799–800 (1963). Any doubts as to construction should be resolved in favor of arbitration. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The Court finds that the terms of the arbitration clause are unambiguous and that the claim involved in the Montana action is within the scope of the arbitration agreement. First, the Court finds that the Agreements do not limit Defendants' right to seek injunctive relief or specific performance. Paragraph 10 does not in any way address, let alone expressly impose any limit on, Defendants' right to seek relief through litigation. Moreover, the language of Paragraph 14(b), with its references to the "parties" in the context of establishing where litigation would take place, clearly indicates that both Airtel and Defendants could bring litigation. Airtel, as one of the parties, would not have expressly consented to exclusive jurisdiction, agreed that venue is proffered, and waived its right to transfer if only Airtel could bring litigation.

The Agreements, however, do not go so far as to exclude all claims for injunctive relief and specific performance from arbitration. When the Agreements are read as a whole, it is clear that the exception carved out in Paragraph 14(a) is meant to apply to claims for injunctive relief or specific performance intended to maintain the status quo pending arbitration.

Both subparts of Paragraph 14 discuss the dispute resolution process. While Paragraph 14(a) provides that any controversy or claim "other than one for injunctive relief or specific performance" shall be settled by arbitration, that section cannot

---

**7.** Neither party asserts that the contract language is ambiguous.

be read without Paragraph 14(b). Paragraph 14(b) specifically limits "injunctive relief to maintain the status quo pending arbitration." Failure to read the limiting language of Paragraph 14(b) in Paragraph 14(a) would render it meaningless.[8]

Here, the Montana action is in essence a request for relief on the merits of a breach of contract claim, precisely the type of claim the parties intended to be settled through arbitration. In addition, Defendants are not seeking arbitration, let alone asking the Montana Court to maintain the status quo pending arbitration. For all the above reasons, the Court finds that the current dispute falls within the scope of the arbitration agreement and grants Airtel's motion to compel arbitration. Accordingly, Defendants must submit all of their claims in the Montana action to arbitration. In addition, this case is stayed in its entirety pending resolution of the arbitration proceeding.[9]

### Conclusion

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 14) is **DENIED**;

2. Plaintiff's Motion to Compel Arbitration, Stay Action, and Enjoin Parallel Proceeding (Doc. No. 5.) is **GRANTED** as follows:

 a. Defendants must submit all of their claims in the Montana action to arbitration in Minneapolis, Minnesota;

 b. This case is stayed in its entirety pending resolution of the arbitration proceeding;

 c. Defendants are enjoined from proceeding with the Montana action.

---

**8.** Defendants' interpretation of the Agreement would not only severely limit the arbitration provision, but the exception would potentially swallow the rule.

**9.** Because the Montana District Court transferred the Montana action to the District of Minnesota, the Court need not consider Airtel's motion to enjoin the Montana action.