2010 ND 166

**Nicole SCHWARZ, Steven Schwarz, and Christopher Schwarz, Plaintiffs and Appellees**

v.

**Deanne J. GIERKE, Defendant and Appellant.**

**No. 20090220.**

Supreme Court of North Dakota.

Aug. 30, 2010.

Anthony Joseph Weiler, Bismarck, N.D., for plaintiffs and appellees.

Eric D. Martin (argued) and Jeffrey J. Kalinowksi (on brief), Bryan Cave LLP, St. Louis, Mo., and Thomas D. Kelsch (appeared), Mandan, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1]   Deanne J. Gierke appeals the district court's order denying her motion to compel arbitration.  We reverse and remand to the district court for entry of an order compelling arbitration of the dispute because we conclude the district court erred in holding the relevant arbitration provision does not apply.

I

[¶ 2]   Nicole Schwarz, Steven Schwarz and Christopher Schwarz ("Schwarzes"), the children and beneficiaries of Jodee Schwarz, commenced this action against Deanne Gierke for her alleged negligence in assisting Jodee Schwarz to terminate two life insurance policies and to secure a purportedly unsuitable policy.  Gierke is a

financial advisor with the Edward Jones brokerage firm's office in Beulah, North Dakota. Edward Jones is not a party to this action. Gierke is also a licensed insurance producer. Although Schwarzes maintain Gierke was licensed to independently sell insurance policies for numerous companies, including Protective Life Insurance Company ("Protective"), the parties do not dispute that Gierke worked as an Edward Jones financial advisor at the time of the insurance transactions.

[¶ 3] Before the insurance transactions occurred, Jodee Schwarz in July 2007, opened an Edward Jones client account through Gierke. Jodee Schwarz signed an Edward Jones account agreement providing that Edward Jones and its agents offered a broad range of financial products and services, including insurance services. As part of the client agreement, Jodee Schwarz signed an "Account Authorization and Acknowledgment Form." This authorization in bold print states: "The Edward Jones Account Agreement and Disclosure Statement contains, on page 19, paragraph 1, a binding arbitration provision which may be enforced by the parties."

[¶ 4] The binding arbitration provision found on page 19 of the account agreement is titled "ARBITRATION AGREE-MENT" and states, in part, that "[a]ll parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." The arbitration agreement further states:

"I agree that this Agreement shall be governed by the laws of the State of Missouri without giving affect to the choice of law or conflict of laws provisions thereof. Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this Agreement, or to the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration."

[¶ 5] On page one of the account agreement, under "GENERAL ACCOUNT PROVISIONS," there is set forth the "Services Provided by Edward Jones Under the Terms of this Agreement," which in addition to brokerage services, states in part:

"You may also provided [sic] me *with related services and information,* such as investment research, investor education, financial tools (including financial calculators and asset allocation analysis), recommendations about whether to buy, sell, or hold securities, *as well as other information about financial products and services.* I understand that you will not charge a separate fee for these services and that they are part of your brokerage services. I understand that your brokerage *and related services* do not constitute financial planning or any other investment advisory service."

(Emphasis added.) Additionally, following the heading "PERIODIC TRANSAC-TIONS PROGRAM," there is a section on page 15 of the agreement entitled, "Systematic Insurance Transactions." This section provides the applicable terms for such insurance transactions, "[i]f I have authorized and instructed [Edward] Jones to begin and continue until further notice from me periodic transactions concerning insurance policies, including but not limited to, annuities, life insurance, long-term care insurance, and disability insurance (the 'policy' or 'policies') issued to me."

[¶ 6] Before executing the account agreement, Jodee Schwarz on May 2006

had signed an "Edward Jones Individual Retirement Account Authorization, Adoption Agreement and Beneficiary Designation" naming the Schwarzes as primary beneficiaries. This account authorization and agreement specifically refers to and contains a binding arbitration provision, identical to the arbitration agreement found in the account agreement Jodee Schwarz executed in July 2007.

[¶ 7] In November 2007, Gierke assisted Jodee Schwarz in terminating two Prudential life insurance policies each with a $100,000 death benefit that named her children as beneficiaries, transferring the cash surrender value into a life insurance policy from Protective. The Protective policy had a $200,000 death benefit and named her children as beneficiaries. On March 31, 2008, Jodee Schwarz committed suicide. Protective subsequently denied payment of the death benefit under the policy because the policy contained a "suicide exclusion," a one-year exclusionary period under which the policy's death benefit would not be paid in the event of the insured's suicide. Protective instead paid Schwarzes an amount significantly less than the policy's death benefit, constituting a refund of the policy premiums paid.

[¶ 8] On April 8, 2008, Nicole Schwarz, Steven Schwarz and Christopher Schwarz each signed an "Edward Jones Individual Retirement Account Authorization, Adoption Agreement and Beneficiary Designation" form, containing the same binding arbitration provisions. On April 2, 2009, Schwarzes commenced this action against Gierke, asserting the following in their complaint:

"5. Jodee Schwarz had two Prudential life insurance policies insuring her life for $100,000, with her three children, Nicole Schwarz, Steven Schwarz, and Christopher Schwarz, named as the named beneficiaries.

"6. On or about November 9, 2007, Gierke assisted Jodee Schwarz in terminating the two Prudential life insurance policies and transferring the cash surrender value into one Protective Life Insurance Company (Protective) life insurance policy. Jodee Schwarz's three children were still the named beneficiaries of the $200,000 death benefit.

"7. The Protective life insurance policy contained a one-year exclusionary period under which the policy's death benefit would not be paid out if Jodee Schwarz committed suicide. Unfortunately, on March 31, 2008, Jodee Schwarz committed suicide and Protective denied payment of the $200,000 death benefit.

"8. There was no issue with respect to disqualification or exclusion for payment of the two $100,000 Prudential life insurance policies, notwithstanding Jodee Schwarz's suicide.

"9. Gierke breached her duty to Jodee Schwarz and the beneficiaries of the life insurance policies by securing for Jodee Schwarz an unsuitable life insurance policy.

"10. Gierke had sufficient information about Jodee Schwarz's medical history and placed Jodee Schwarz in an unsuitable life insurance policy."

[¶ 9] In response, Gierke filed a motion to dismiss or stay litigation and compel arbitration, asserting that under the agreement the binding arbitration provisions apply because the action is a controversy "arising out of or relating to" transactions with Edward Jones, its agents, or its employees. Schwarzes opposed Gierke's motion to compel arbitration, arguing they did not sue Edward Jones, their claim was not against Edward Jones or Protective, and their tort claim for Gierke's alleged negligence in placing Jodee Schwarz in an unsuitable insurance

policy had nothing to do with any Edward Jones account.

[¶ 10] In an order dated June 26, 2009, the district court denied Gierke's motion to compel arbitration, concluding the arbitration clause at issue did not apply in this case. The court held that there was no dispute that an arbitration agreement existed, but that the issue presented was whether the case was subject to the arbitration agreement. The court concluded that the controversy centered around Gierke securing the Protective life insurance policy for Jodee Schwarz and that "Jodee Schwarz signed a completely separate set of documents" governing the Protective policy. Relying on N.D.C.C. § 26.1–26–06 and *Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶ 21, 561 N.W.2d 273, the court concluded that as a matter of law "a person who is an appointed insurance producer for an insurance company is that company's agent" and, thus, when Gierke secured the Protective policy, she was acting as Protective's agent. Gierke appealed from the court's order denying her motion to compel arbitration.

## II

[¶ 11] Chapter 32–29.3, N.D.C.C., contains the North Dakota Uniform Arbitration Act. When an arbitration clause is at issue, "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." N.D.C.C. § 32–29.3–06(2). Under N.D.C.C. § 32–29.3–28(1)(a), "[a]n appeal may be taken from … [a]n order denying a motion to compel arbitration." *See also* Mo.Rev.Stat. § 435.440.1 (expressly granting under the Missouri Uniform Arbitration Act the right to appeal orders denying an application to compel arbitration or granting an order to stay arbitration). In *State ex rel. Stenehjem v.*

*Philip Morris, Inc.,* this Court established our standard of review for an appeal from a district court's denial of a motion to compel arbitration:

"Although we have not previously stated a standard of review for an appeal from the denial of a motion to compel arbitration, most courts apply the de novo standard, *see, e.g., Brown v. Denson*, 895 So.2d 882, 885 (Ala.2004); *The Hillier Group, Inc. v. Torcon, Inc.*, 932 So.2d 449, 452 (Fla.Dist.Ct.App.2006); *State ex rel. Wagner v. Kay* [15 Neb. App. 85], 722 N.W.2d 348, 353 (Neb.Ct. App.2006), unless the lower court's decision was based on factual findings, in which case the clearly erroneous standard applies. *See Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 998 (8th Cir. 2006); *Robertson v. Health Net of California, Inc.* [132 Cal.App.4th 1419], 34 Cal.Rptr.3d 547, 551 (Cal.Ct.App.2005)."

2007 ND 90, ¶ 13, 732 N.W.2d 720. "[C]onstruction of a written contract to determine its legal effect is a question of law, fully reviewable on appeal." *Id.* at ¶ 13; *see also Peoples State Bank of Truman, Inc. v. Molstad Excavating, Inc.*, 2006 ND 183, ¶ 19, 721 N.W.2d 43. Further, recognizing a strong state and federal public policy favoring the arbitration process, this Court resolves any doubts concerning the scope of arbitrable issues in favor of arbitration when there is a broad arbitration clause and no exclusion clause. *See Philip Morris*, at ¶ 14; *Gratech Co. Ltd. v. Wold Eng'g, P.C.*, 2003 ND 200, ¶ 14, 672 N.W.2d 672; *State v. Stremick Constr. Co.*, 370 N.W.2d 730, 732 (N.D. 1985); *see also AT & T Techs. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 429 (Mo.2003); *McCracken v. Green Tree Servicing, LLC*, 279 S.W.3d 226, 228 (Mo.Ct.App.2009).

[¶ 12] Gierke asserts the arbitration agreement contained in the Edward Jones account agreement should be enforced under the Federal Arbitration Act ("FAA") because it is "a contract evidencing a transaction involving commerce." 9 U.S.C. §§ 1–16. Gierke also asserts the Missouri Uniform Arbitration Act, Mo. Rev.Stat. §§ 435.350–435.470, governs, in that the agreement states: "[T]his Agreement shall be governed by the laws of the State of Missouri without giving effect to the choice of law or conflict of laws provisions thereof."

[¶ 13] Gierke thus contends under both the FAA and the Missouri Uniform Arbitration Act, the arbitration agreement should be enforced. *See, e.g., Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA...."); *Whitney v. Alltel Commc'ns, Inc.,* 173 S.W.3d 300, 306–07 (Mo.Ct.App.2005) ("[W]here a Missouri court is addressing an arbitration provision falling within the FAA, the Missouri court must apply the substantive law of the FAA ..., but may apply state procedural rules" which do not defeat any of the FAA's substantive rights). In *Dunn Indus. Group,* the Missouri Supreme Court provided the following framework under the FAA for analyzing a motion to compel arbitration:

> "The Federal Arbitration Act (FAA) evinces a liberal policy favoring arbitration agreements so that disputes might be resolved without resort to the courts. *Greenwood v. Sherfield,* 895 S.W.2d 169, 173 (Mo.App.1995). Before a party may be compelled to arbitrate under the FAA, a court must determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the substantive scope of that agreement. *Houlihan v. Offerman & Co., Inc.,* 31 F.3d 692, 694–95 (8th Cir.1994). A court must compel arbitration if it determines that the parties agreed to arbitrate the dispute. *Id.* at 695.

> "The usual rules and canons of contract interpretation govern the subsistence and validity of an arbitration clause. *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 258 (Mo. App.1985). Whether a dispute is covered by an arbitration provision is relegated to the courts as a question of law. *Drake Bakeries, Inc. v. Local 50,* 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). An appellate court's review of the arbitrability of a dispute is de novo. *Fru–Con Constr. Co. v. Southwestern Redevelopment Corp. II,* 908 S.W.2d 741, 743–44 (Mo.App.1995)."

112 S.W.3d at 427–28.

[¶ 14] In this case, the district court held the account agreement arbitration provision did not apply because Gierke was securing a life insurance policy for Jodee Schwarz, rather than transacting business pertaining to an Edward Jones account. Because the court's decision does not rest on factual findings, but instead decides whether the account agreement applied based on undisputed facts, we apply a de novo standard of review.

### III

[¶ 15] On appeal, Gierke argues the Schwarzes' claims are subject to arbitration under the plain language of the arbitration agreement and the district court erred in construing the arbitration agreement.

[¶ 16] "The cardinal principle of contract interpretation is to ascertain the

intention of the parties and to give effect to that intent." *Dunn Indus. Group,* 112 S.W.3d at 428 (citing *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. 1995)). Contract terms "are read as a whole to determine the intentions of the parties and are given their plain, ordinary, and usual meaning." *Dunn Indus. Group,* at 428; *Butler,* at 21; *City of Harrisonville v. Public Water Supply Dist. No. 9 of Cass County,* 49 S.W.3d 225, 231 (Mo.Ct. App.2001). "[E]ach term of a contract is construed to avoid rendering other terms meaningless." *Dunn Indus. Group,* at 428 (citing *City of Harrisonville,* at 231). "A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Dunn Indus. Group,* at 428. "Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone, and a court will not resort to construction where the intent of the parties is expressed in clear, unambiguous language." *Id.* at 428–29. "Extrinsic evidence may not be introduced to vary or contradict the terms of an unambiguous agreement or to create an ambiguity." *Id.* at 429 (citing *Helterbrand v. Five Star Mobile Home Sales, Inc.,* 48 S.W.3d 649, 658 (Mo.Ct.App.2001)).

[¶ 17] Further, "[i]n construing arbitration clauses, courts have categorized such clauses as 'broad' or 'narrow.'" *Dunn Indus. Group,* 112 S.W.3d at 428 (citing *McCarney v. Nearing, Staats, Prelogar & Jones,* 866 S.W.2d 881, 889 (Mo. Ct.App.1993)). "A broad arbitration provision covers all disputes arising out of a contract to arbitrate; a narrow provision limits arbitration to specific types of disputes." *Dunn Indus. Group,* at 428.

[¶ 18] Here, the arbitration provision contained in the Edward Jones account agreement states, in pertinent part:

"*Any controversy arising out of or relating* [1] *to any of my* accounts *or* [2] *transactions with you, your* officers, directors, *agents and/or employees for me,* [3] to this Agreement, or [4] to the breach thereof, or relating [5] to transactions or accounts maintained by me with any of your predecessors or successor firms by merger, acquisition or other business combinations from the inception of such accounts *shall be settled by arbitration.*"

(Emphasis added.) The unambiguous language of this sentence provides that "[a]ny controversy arising out of or relating to any of my accounts or transactions with ... [Edward Jones'] agents and/or employees for me ... shall be settled by arbitration." This provision refers to any controversy pertaining to any accounts "or" transactions. Use of the disjunctive word "or" generally indicates an alternative between different things or actions. *See J.H. Berra Constr. Co., Inc. v. Missouri Highway & Transp. Comm'n,* 14 S.W.3d 276, 280 (Mo.Ct.App.2000); *see also Narum v. Faxx Foods, Inc.,* 1999 ND 45, ¶ 20, 590 N.W.2d 454.

[¶ 19] On its face, this broad provision requires arbitration of any controversy, not only "arising out of or relating to" an Edward Jones accounts, but also "arising out of or relating to" any transaction with Edward Jones agents or employees for the client. In other words, arbitration is required for any controversy arising out of or relating to any accounts or, alternatively, any transactions. The provision does not limit transactions with an Edward Jones agent or employee to only those transactions occurring within a specific Edward Jones account.

[¶ 20] The account agreement containing the arbitration provision at issue here contemplates a wider array of potential financial services and transactions from

which potential controversies could arise than simply transactions in specified accounts. Thus, considering the agreement as a whole, we conclude the scope of the arbitration provision necessarily includes any controversy from any financial transactions with an Edward Jones employee or agent, so long as the transactions fall within the context of the account agreement. *Cf. Timmons v. Starkey*, 380 S.C. 590, 671 S.E.2d 101, 105–06 (2008) (arbitration compelled for tort and contract claims against broker's employer arising from broker's alleged conversion of account funds where duty owed arose solely from contractual relationship and holding a significant relationship existed between contract and claims); *In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 188–190 (Tex. 2007) (arbitration compelled for claims against brokerage firm's employee because arbitration agreement generally includes corporate agent's actions and claims were in substance against non-party brokerage firm); *Smith Barney, Inc. v. Henry*, 775 So.2d 722, 724–27 (Miss.2001) (arbitration compelled for non-signatory trust beneficiaries claims against broker and firm alleging negligence in permitting transactions with executrix/trust to convert account funds).

[¶ 21] We next look to whether Schwarzes' claims are within the scope of the arbitration provision. Schwarzes alleged that Gierke assisted Jodee Schwarz in terminating the two Prudential policies and transferring the cash surrender value into the Protective policy and that Gierke "breached her duty to Jodee Schwarz and the beneficiaries of the life insurance policies" by securing and placing Jodee Schwarz in an unsuitable life insurance policy. Thus, Schwarzes are alleging tortious conduct by Gierke in terminating the policies, transferring the cash surrender value, and securing and placing Jodee Schwarz into an unsuitable life insurance

policy. We conclude these financial transactions were with an Edward Jones representative and agent and fall within the scope of the arbitration provision.

[¶ 22] Although in a different procedural posture, *Monarch Life Ins. Co. v. Donahue*, 702 F.Supp. 1195, 1197–98 (E.D.Pa.1989), is instructive. In *Monarch Life*, the insurer brought a declaratory judgment action against the insured's beneficiaries, his widow/executrix and minor son ("Donahues"), seeking to declare the life insurance policy void ab initio on grounds the deceased insured had materially misrepresented his health condition in his insurance application, which the insurer had relied on in issuing the policy. *Id.* at 1196. Donahues counterclaimed for a declaratory judgment that the policy was legally binding and to be given full force and effect. *Id.* Donahues also brought a third-party complaint against Merrill Lynch, asserting the life insurance application was filled out with the assistance of a Merrill Lynch employee, who had served as the Donahues' investment broker, and any impropriety in the application was Merrill Lynch's fault. *Id.* at 1197.

[¶ 23] The court in *Monarch Life* construed Donahues' third-party complaint as negligence or fraud claims against Merrill Lynch, seeking damages in the amount of the policy's face value if the policy was rescinded. 702 F.Supp. at 1197. The court granted Merrill Lynch's motion to compel arbitration based on an arbitration clause, contained in the customer agreement executed between the insured and Merrill Lynch, covering "any controversy between us arising out of your business or this agreement." *Id.* at 1198. The court held the beneficiaries' claims were subject to the arbitration clause because the clause's language was "worded in a general way to include 'any controversy' between the parties." *Id.*

[¶ 24]   Gierke asserts the facts in *Monarch Life* are similar to those in this case. We agree.   Jodee Schwarz signed an account agreement containing an arbitration provision with Edward Jones; the arbitration provision broadly covered "any controversy";   Gierke, an Edward Jones agent and representative, assisted Jodee Schwarz in securing the Protective life insurance policy;   after Jodee Schwarz's death, Protective denied coverage under the policy terms;   and Schwarzes brought a tort claim for Gierke's purported breach of a duty to Jodee Schwarz and her beneficiaries.

[¶ 25]   Courts have extended the scope of arbitration provisions to non-signatory, third-party beneficiaries.   *See Tractor–Trailer Supply Co. v. NCR Corp.,* 873 S.W.2d 627, 629–631 (Mo.Ct.App.1994) ("[a] third-party beneficiary is one who is not privy to a contract but who is benefited by it and who may maintain a cause of action for its breach" and holding plaintiffs could not claim a right to maintain an action based on their status as computer system users, but then disavow the relationship for purposes of avoiding arbitration); *see also Nesslage v. York Sec., Inc.,* 823 F.2d 231, 233–34 (8th Cir.1987). Schwarzes assert their own agreement to arbitrate disputes only had to do with accounts at Edward Jones.   Schwarzes maintain that, even broadly construed, their claims are based on Gierke's actions as an insurance agent and are not subject to arbitration under the parties' agreement.   The parties here, however, did not dispute the Schwarzes are third-party beneficiaries under Jodee Schwarz's account agreement with Edward Jones.   Nonetheless, Schwarzes cannot base their tort action on a purported duty Gierke owed to Jodee Schwarz and, at the same time, disavow the full extent of the relationship between Gierke and Jodee Schwarz to avoid the arbitration provision.

[¶ 26]   Schwarzes acknowledge on appeal that tort claims can be subject to arbitration, *see, e.g., State ex rel. Paine-Webber, Inc. v. Voorhees,* 891 S.W.2d 126, 128 (Mo.1995); *David v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 440 N.W.2d 269, 274 (N.D.1989), but argue that their tort claims are derived from Gierke's negligence with respect to the Protective policy, rather than from any Edward Jones accounts and that the Protective policy was independent of any account Jodee Schwarz held at Edward Jones.   However, as discussed, the plain language of the agreement is broader than only transactions involving a specific Edward Jones account and includes any transactions with any Edward Jones agents or employees within the context of the entire agreement.

[¶ 27]   For example, in *In re Merrill Lynch Trust Co.,* the Texas Supreme Court held the plaintiffs' claims against a Merrill Lynch employee, involving certain trust and life insurance transactions, were in substance claims against Merrill Lynch and were subject to arbitration.   235 S.W.3d at 188–90.   Notably, the account agreement contained a broad arbitration provision covering "all controversies" involving "any transaction";   and the plaintiffs, while suing the Merrill Lynch employee, trust company, and life insurance company, had not sued Merrill Lynch.   *Id.* at 188.   The court concluded the claims against the Merrill Lynch employee had to be arbitrated under the agreement for two reasons.   "First, 'parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity.' "   *Id.* at 188 (quotation omitted).   The court reasoned:

"Corporations can act only through human agents, and many business-related

torts can be brought against either a corporation or its employees. If a plaintiff's choice between suing the corporation or suing the employees determines whether an arbitration agreement is binding, then such agreements have been rendered illusory on one side. As we recently noted, this would not place arbitration agreements on equal footing with other contracts:

> When contracting parties agree to arbitrate all disputes 'under or with respect to' a contract (as they did here), they generally intend to include disputes about their agents' actions because '[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.' If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract."

*Id.* at 188–89 (citations and quotation omitted). Second, the court said the substance of the plaintiffs' action was against Merrill Lynch, even though not named as a party. *Id.* at 189. The court explained:

> "While the plaintiffs allege they are suing Medina *only for his actions while wearing 'the hat of the insurance agent,' brokers do not change employers every time they sell someone else's product.* The commission on this insurance transaction was paid directly to Merrill Lynch, not Medina; if the latter was acting as an agent for ML Life or ML Trust, then so was the former. As there is no question Medina was acting in the course and scope of his employment, if

he is liable for the torts alleged against him, then Merrill Lynch is too."

*Id.* at 189 (emphasis added).

[¶ 28] Here, although the district court concluded that Gierke acted only as an agent of Protective when she secured the Protective policy, the parties do not dispute that Gierke worked for Edward Jones and that Edward Jones offered a broad spectrum of financial products and services, including life insurance. Regardless of whether Gierke was simultaneously a Protective agent at the time of the insurance transaction, for purposes of the arbitration agreement, Gierke also worked for Edward Jones. Gierke remained an Edward Jones agent and representative, and the record does not suggest Gierke ceased working for Edward Jones when terminating Jodee Schwarz's "suitable" policies and when securing the purported "unsuitable" policy. Further, the Edward Jones account agreement contemplates that, as a part of "brokerage services," a client would receive additional financial services and information from Edward Jones, including certain services involving insurance.

[¶ 29] Resolving any doubts concerning the scope of arbitrable issues in favor of arbitration, we conclude the arbitration provision at issue is a broad provision which applies to Schwarzes' claims based primarily on the relationship between Gierke and Jodee Schwarz and asserts a breach of an alleged duty Gierke owed to Jodee Schwarz. We therefore conclude the district court erred in denying Gierke's motion to compel arbitration.

## IV

[¶ 30] The district court order denying the motion to compel arbitration is reversed, and the case is remanded for entry of an order compelling arbitration.

[¶ 31]   GERALD W. VANDE WALLE, C.J., JOHN C. McCLINTOCK, JR., D.J., WILLIAM F. HODNY, and RONALD E. GOODMAN, S.J., concur.

[¶ 32]   The Honorable JOHN C. McCLINTOCK, JR., D.J., and the Honorable WILLIAM F. HODNY, S.J., sitting in place of SANDSTROM, J., and MARING, J., disqualified.  The Honorable RONALD E. GOODMAN, S.J., sitting in place of KAPSNER, J., who disqualified herself subsequent to oral argument.