# United States Court of Appeals
## For the Eighth Circuit

No. 23-2628
_____

Mikkelson Land, LLLP

*Plaintiff - Appellant*

v.

Continental Resources, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: March 13, 2024
Filed: July 23, 2024
_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

This appeal concerns the interpretation of a Surface Use Agreement (SUA) executed between Mikkelson Land, LLLP, and Continental Resources, Inc., which governed Continental's use of Mikkelson's land for its oil and gas operations. The parties dispute whether the SUA gave Continental the authority to lay water pipeline across the area governed by the agreement, and Mikkelson filed this action, alleging multiple claims of breach of contract, trespass, and seeking injunctive relief. The

district court,[1] considering competing motions for summary judgment on some of the claims, granted summary judgment in favor of Continental, holding that the SUA was unambiguous and explicitly authorized Continental to install water pipelines. The parties reached a settlement on the remaining claims and stipulated to their dismissal, preserving Mikkelson's right to appeal the adverse grant of summary judgment. Mikkelson now appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

As part of its large-scale oil and gas operations in North Dakota, Continental secured the mineral rights to several tracts of land within McKenzie County. To facilitate its operations as to these mineral estates, Continental entered into SUAs with the various landowners who owned the surface estates subject to the mineral estates, including Mikkelson. These SUAs detailed Continental's rights and responsibilities with respect to its use of the surface estates and provided the manner by which Continental would compensate the landowners. In 2012, Mikkelson and Continental executed an SUA regarding the tract of property that forms the basis of this dispute, detailing the agreement between the parties and allowing Continental to enter upon and make use of the surface estate in furtherance of its operations. Specifically, through the SUA, Mikkelson granted Continental the right "to go upon and across the Property as [Continental] may reasonably require for well locations, roads and associated facilities, related to its Operations." In addition to the broad grant of an easement, the SUA includes a compensation provision, providing the parameters by which Continental is to pay Mikkelson "[a]s compensation and damages for [Continental's] use of any of the Property under the Leases and for its Operations." As it relates to the installation of pipelines on the surface estate, the SUA provides:

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

**[3](b) <u>Damage Payments for Pipelines.</u>**

(1) For each pipeline installed on the Property and related to the Drillsites, Operator shall pay Owner the sum of $75.00 per rod.

   (i)  **<u>Gas Pipelines</u>**. Operator shall pay Owner a lump sum of Ninety Three Thousand One Hundred Fifty and NO/100 Dollars ($93,150.00), or $75.00 per rod for 1,242 rods of right of way containing pipeline(s) for gas (regardless of whether any such pipelines are characterized as gathering lines, transmission lines, or flow lines), and/or power line(s); any such gas pipeline must be installed below ground, but any such power line may be installed above or below ground. Such compensation shall include the rights for Operator Group: (a) from time to time and at any time or times, to lay, construct, operate, inspect, maintain, repair, replace with same or different size pipe, remove, or abandon in place such pipeline(s) and/or power line(s) within the right of way granted; (b) to construct from time to time and at any time or times additional pipelines, appurtenances, valves, metering equipment, cathodic protection, wires, conduits, cables, and/or power lines and other facilities needed for Operator's Operations within the right of way granted; and (c) from time to time and at any time or times, to construct, improve, operate, use, inspect, maintain, and repair all facilities within the right of way granted.

   (ii) **<u>Oil Pipelines</u>**. Operator shall pay Owner a lump sum of Ninety Nine Thousand Three Hundred Ninety Nine and 75/100 Dollars ($99,399.75), or $75.00 per rod for 1,325.33 rods of right of way containing pipeline(s) for oil (regardless of whether any such pipelines are characterized as gathering lines, transmission lines, or flow lines), and/or power line(s); any such oil pipeline must be installed below ground, but any such power line may be installed above or below ground. Such compensation shall include the rights for Operator Group: (a) from time to time and at any time or times, to lay,

construct, operate, inspect, maintain, repair, replace with same or different size pipe, remove, or abandon in place such pipeline(s) and/or power line(s) within the right of way granted; (b) to construct from time to time and at any time or times additional pipelines, appurtenances, valves, metering equipment, cathodic protection, wires, conduits, cables, and/or power lines and other facilities needed for Operator's Operations within the right of way granted; and (c) from time to time and at any time or times, to construct, improve, operate, use, inspect, maintain, and repair all facilities within the right of way granted.

(iii)    **<u>Salt Water, Fresh Water, and Air Pipelines</u>**. Operator shall pay Owner $75.00 per rod for any additional, future right of way containing pipeline(s) for salt water, fresh water, air, and/or power line(s); any such salt water, fresh water, or air pipeline must be installed below ground, but any such power line may be installed above or below ground. Such compensation shall include the rights for Operator Group: (a) from time to time and at any time or times, to lay, construct, operate, inspect, maintain, repair, replace with same or different size pipe, remove, or abandon in place such pipeline(s) and/or power line(s) within the right of way granted; (b) to construct from time to time and at any time or times additional pipelines, appurtenances, valves, metering equipment, cathodic protection, wires, conduits, cables, and/or power lines and other facilities needed for Operator's Operations within the right of way granted; and (c) from time to time and at any time or times, to construct, improve, operate, use, inspect, maintain, and repair all Facilities within the right of way granted.

. . . .

(2)The easements set forth in this Agreement are for those pipelines proposed and mapped in the attached Exhibit C (Red Mike Ranch Plan Map) only.

Exhibit C to the SUA is a plan map of the property marked with proposed pipelines.

In 2015, the parties executed an addendum to the SUA by which Mikkelson granted Continental expanded rights in exchange for $100,000. As relevant here, the addendum states:

> WHEREAS, Owner and Operator desire to amend the Agreement to expand the rights granted to Operator and stipulate and agree to the additional compensation to be paid to Owner for such expanded rights granted to Operator.
>
> NOW, THEREFORE, in consideration of the foregoing recitals and terms, covenants and conditions herein, Owner and Operator hereby agree as follows:
>
> 1. Owner grants to Operator Group easements and rights of way for ingress and egress on, over, above, below, and across the Property and use of the surface and subsurface of the Property for any and all operations, which, in the sole and exclusive discretion of Operator, are deemed necessary; such easements and rights of way include but are not limited to easements and rights of way for Operator Group's drilling, completion, and production operations on the Property related to the construction, installation, operation, inspection, maintenance, repair, and replacement of an additional well pad consisting of four (4) additional wells (the Florida Federal 8-11H, Florida Federal 9-11H1, Alpha 8-14H1, and Alpha 9-14H wells) and any associated facilities deemed necessary by Operator, including but not limited to compressor stations, meter sites, battery sites, roads, reserve pits and other facilities for the disposal of waste or byproducts, tanks and storage facilities, treaters, separators, deyhdrators, pipelines and power lines.

In 2018, Continental began installing a water pipeline system, known as the Boulder Gathering System. The Boulder Gathering System is a series of pipelines that aids Continental's operations by carrying freshwater, which is used in hydraulic fracturing to increase oil production, and saltwater, which is a byproduct of drilling operations, to and from individual wells on a drill site. Continental notified Mikkelson that it would be entering Mikkelson's land to install pipelines for the Boulder Gathering System and that Mikkelson would be compensated pursuant to the terms of the SUA. Mikkelson objected, stating that the SUA's plan map did not include these pipelines and that the SUA provisions related to damages for Salt Water, Fresh Water, and Air Pipelines were inapplicable. Continental responded that the SUA authorized the installation of water pipelines and stated that it would move forward with the project. Continental completed construction of the Boulder Gathering System in June 2019. Continental remitted four separate payments to Mikkelson for the pipelines: $27,649.50 in September 2018, $45,987.75 in October 2018, $90,023.25 in May 2019, and $3,600.75 in April 2020. Mikkelson did not accept any of these payments.

Instead, Mikkelson initiated this action in March 2020, alleging eight claims against Continental: (1) breach of contract for installation of excess pipelines; (2) trespass for installation of pipelines; (3) breach of contract for failure to compensate for roads and well sites; (4) breach of contract for failure to reclaim; (5) breach of contract for failure to consult; (6) breach of contract for failure to make reasonable efforts; (7) breach of contract for failure to install access gates; and (8) a claim for injunctive relief. The parties filed competing summary judgment motions with respect to the breach of contract and trespass claims related to the installation of pipelines and the claim for injunctive relief. The district court denied Mikkelson's motion and granted Continental's motion. As to the breach of contract claim, the district court determined that the SUA explicitly "gave Continental the authority to install [water pipelines] in the future and set out a payment calculation if that were to happen," concluding that "the SUA speaks for itself and no ambiguity in its meaning exists." The district court noted that other provisions of the SUA discussed circumstances where Continental would be required to obtain prior consent from

-6-

Mikkelson, including, for example, the drilling of water wells, and that no such limitation appeared in regards to the installation of water pipelines. The district court also considered the addendum and its stated purpose of expanding the rights that Mikkelson granted to Continental, finding that the addendum specifically granted Continental easements and rights of way "for any and all operations, which, in the sole and exclusive discretion of [Continental,] are deemed necessary." The district court also rejected Mikkelson's argument that the pipelines were impermissible because they were not laid out in the plan map, noting that North Dakota law does not require the description of an exact location of an easement. Finally, the district court concluded that, even if the SUA did not authorize the installation of the pipelines, Continental still had authority to install them pursuant to North Dakota law and relevant leases. The district court further held that Continental's authorization to install the water pipelines defeated Mikkelson's claim for trespass and rendered its request for injunctive relief moot.

After the district court granted summary judgment on these claims, the parties settled the remaining claims and stipulated their dismissal. Mikkelson preserved the right to appeal the adverse grant of summary judgment, which it now does, arguing that the district court erroneously determined that the SUA authorized Continental to install the water pipelines.[2]

II.

Mikkelson asserts that the district court erred because the SUA and addendum unambiguously limit Continental to the installation of certain oil and gas pipelines

_____

[2]Mikkelson states that it "does not appeal the District Court's finding that Continental has authority to install the Boulder Gathering System 'through other legal means, including by leases, unitization orders, and its status as a mineral lease holder under North Dakota law.'" Mikkelson nonetheless states that the Court must still decide the issue of whether the SUA allows installation of the pipelines because, if the Court were to rule in Mikkelson's favor, on remand it would be entitled to argue for compensation that differs from that provided by the SUA.

that were specifically referenced in the SUA.  In the alternative, Mikkelson asserts that the SUA and addendum are ambiguous, and extrinsic evidence is necessary to determine the parties' intent.  "'We review de novo a district court's grant of summary judgment.'  Summary judgment is proper only if 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.'"  Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1024 (8th Cir. 2021) (citations omitted).

Under North Dakota law, which applies to this diversity action, "[t]he interpretation of a written contract generally is a question of law for the court, making summary judgment an appropriate method of disposition in contract disputes."  Burk v. State ex rel. Bd. of Univ. & Sch. Lands, 890 N.W.2d 535, 539 (N.D. 2017).  In conducting contract interpretation, "the language of a contract governs its interpretation if the language is clear and unambiguous."  In re Racing Servs., Inc., 744 F.3d 543, 549 (8th Cir. 2014) (applying North Dakota law).  "A contract is ambiguous when rational arguments can be made for different positions about its meaning . . . .  When a contract is ambiguous, the terms of the contract and the parties' intent becomes a question of fact."  Gap, Inc. v. GK Dev., Inc., 843 F.3d 744, 748 (8th Cir. 2016) (alteration in original) (citation omitted).  Further, "courts are to interpret the contract as a whole to give effect to all of its provisions, and . . .  the words of a contract are to be given their ordinary meaning, absent the parties' use of the words in a technical sense."  In re Racing Servs., Inc., 744 F.3d at 549 (citation omitted).  Finally, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible."  Id. (alteration in original) (citation omitted).

We agree with the district court that the language of the SUA is clear and unambiguous and grants Continental the right to install the water pipelines.  Paragraph 3(b)(1)(iii) specifically contemplates the installation of "any additional, future right of way containing pipeline(s) for salt water [or] fresh water," and provides the payment structure for any of these future pipelines.  It does not contain any limitations on the location of any future or additional water pipeline, nor any

indication that installation of a water pipeline that was not contemplated at the execution of the SUA is impermissible. This provision is subject to only one rational reading, making it unambiguous. See Gap, Inc., 843 F.3d at 748. While we conclude that this language alone is unambiguous, our interpretation of the SUA is bolstered by the language of the addendum which specifically contemplates expanding Continental's rights under the SUA by granting Continental easements "for any and all operations, which, in the sole and exclusive discretion of [Continental,] are deemed necessary." Reading the SUA and the addendum together, Continental may install additional or future water pipelines on the property and has an easement for those purposes.

Mikkelson asserts that the SUA does not grant Continental the authority to install water pipelines because it expressly limited all pipelines to those that were contained in the plan map. However, Mikkelson's proposed construction would impermissibly render some terms of the SUA and addendum meaningless: If the SUA were read to mean that no pipelines could be installed other than those included in the plan map, there would be no need for the SUA to detail the manner of compensation for "any additional, future right of way containing pipeline(s) for salt water [or] fresh water." Mindful that North Dakota law requires that "[e]ach term of a contract is construed to avoid rendering other terms meaningless," Schwarz v. Gierke, 788 N.W.2d 302, 308 (N.D. 2010), we reject Mikkelson's contention.

Mikkelson also asserts that adopting Continental's proposed construction of the SUA creates a conflict between the provision stating that the "easements set forth in this Agreement are for those pipelines proposed and mapped in the attached Exhibit C only," and Paragraph 3(b)(1)(iii), which provides the authority to install water pipelines. Mikkelson further argues that the language in the addendum which broadly expands Continental's rights under the SUA must yield to the specific provision stating that all pipelines are depicted in Exhibit C. Although we acknowledge that, under North Dakota law, "[i]f a conflict exists between a specific provision and a general provision in a contract, the specific provision qualifies the general provision," Rolla v. Tank, 837 N.W.2d 907, 910 (N.D. 2013) (alteration in

original), we perceive no conflict between the terms of the SUA or the SUA and the addendum. Construing the contract "as a whole to give effect to all of its provisions," In re Racing Servs., Inc., 744 F.3d at 549, we read this provision to simply mean that Exhibit C depicted the oil and gas pipelines that were contemplated at the time the SUA was executed, with Paragraph 3(b)(1)(iii) leaving open the possible installation of future water pipelines not then contemplated. And the addendum broadly granted Continental easements and rights of way to carry out this aim. Stated otherwise, water pipelines to which Mikkelson objects were not included in Exhibit C because they were not contemplated at the time the SUA was executed, and, per the terms of the SUA, they did not need to be; the SUA contemplated "future" pipelines. Because there is no conflict between the provisions of the SUA and the SUA and addendum, Mikkelson's argument fails.

Given the foregoing, we conclude that the district court properly interpreted the SUA and addendum to authorize Continental's installation of water pipelines and did not err in granting summary judgment to Continental on this basis. Thus, we need not reach Mikkelson's alternative argument.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____

-10-